IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUCYNETTE ARROYO-DELGADO, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil No.** 15-2001 (FAB) |
| DEPARTMENT OF EDUCATION OF PUERTO RICO, *et al.*, | |
| **Defendants.** | |

OPINION AND ORDER[1]

BESOSA, District Judge.

Lucynette Arroyo-Delgado ("Arroyo-Delgado"), personally and on behalf of her minor son "AGA", filed suit against the Department of Education of Puerto Rico ("PR-DOE") and the Commonwealth of Puerto Rico seeking relief pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. (Docket No. 1.)

Before the Court is defendants' motion to remand or for summary judgment.[2] (Docket No. 24.) Plaintiffs opposed the motion, (Docket No. 45), defendants replied, (Docket No. 54), and plaintiffs filed a surreply, (Docket No. 66). For the reasons that

---

[1] Nathanael R. Krevor, a second-year student at The George Washington University Law School, assisted in the preparation of this Opinion and Order.

[2] The Court considers only whether to remand the case to the PR-DOE because, despite a request for summary judgment in the title of the motion and a summary judgment standard section in the motion, defendants make no arguments supporting an entry of summary judgment in their favor and ask only for a remand to the administrative law judge in their prayer for relief.

follow, the Court **GRANTS IN PART** and **DENIES IN PART** defendants'
motion to remand, **REVERSES** the decision of the administrative law
judge ("ALJ"), and **REMANDS** the issue of the 2014-2015 IEP's
adequacy to the PR-DOE for further proceedings consistent with this
Opinion.

## I.   BACKGROUND

Lucynette Arroyo-Delgado is the mother of AGA, an eleven-year-
old child with disabilities registered in the PR-DOE's special
education program.  (Docket Nos. 1 at pp. 2-3; 45 at p. 9.)  Due to
concerns regarding the adequacy of AGA's education, plaintiffs
filed due process complaint 2014-095-038 with the PR-DOE in July
2014.  (Docket No. 27-1.)  Among other items, the due process
complaint alleged that the PR-DOE had not provided AGA an adequate
individualized education program ("IEP") or educational placement
for the 2014-2015 school year, as required by IDEA.  Id. at pp. 5-
6.   The due process complaint also requested professional
evaluations and assistive technology devices.  Id. at pp. 4-5.

A hearing was held on October 14, 2014, in which plaintiffs
presented witnesses.  (Docket No. 69-1 at pp. 89-250.)  A witness
for the defendants also testified, but the hearing ended for the
day before defendants concluded their case.  Id. at pp. 256-301.
Because of the PR-DOE attorney's busy schedule, the next hearing
could not be scheduled until December 2014.  See id. at pp. 304,
311.

After the October 14 hearing, the case veered off course.  The
ALJ presiding over the October 14th hearing, Judge Juan Palerm-
Nevares, recused himself from the case.  (Docket No. 27-2.)  That
order resulted in the cancellation of the December hearing.  Id. at
p. 7.  The case was then assigned to Judge Luis Tomassini who held
a hearing on January 12, 2015, to determine whether the case should
continue using the transcript from the October 14 hearing or
whether the entire process must begin anew.  (Docket No. 97-1.)
Unable to decide that issue at the January 12 hearing, Judge
Tomassini requested memoranda of law from the parties and scheduled
the next hearing for February 26, 2015.  Id. at pp. 5-8.  On
February 20, 2015, Judge Tomassini issued an order stating that the
case would continue using the transcript from the October 14
hearing, but that the hearing scheduled for February 26 must be
cancelled because the PR-DOE clerical unit could not locate the
case file.  (Docket No. 27-3.)  After Judge Tomassini's five-day
deadline for the PR-DOE clerical unit to produce the case file had
passed, id. at p. 2, plaintiffs twice requested continuation of the
proceedings and scheduling of the next hearing.  (Docket Nos. 100-1
(March 19, 2015); 64-6 (April 22, 2015).)  On May 1, 2015, Judge
Tomassini scheduled the next hearing for May 22, 2015.  (Docket
No. 27-4.)  On May 15, 2015, plaintiffs moved to amend the due
process complaint to include a claim for compensatory education for

the 2014-2015 school year and claims relating to the upcoming 2015-2016 school year.  (Docket No. 27-5.)

The parties next heard from Judge Tomassini on May 21, 2015, in the form of a final order.  (Docket No. 27-7.)  Not only did Judge Tomassini deny plaintiffs' motion to amend the due process complaint, he dismissed the entire complaint as moot because the 2014-2015 school year had ended.  See id. at p. 8.  In reaching this conclusion, Judge Tomassini made three factual determinations:

1.   The student registered in Special Education and is eligible for educational and related services under the category of autism.  Petitioner was placed in [the Ines Maria Mendoza Elementary] School [in] the District of Bayamon at the age of five.

2.   Petitioner, a minor, has been receiving educational services in the [Ines Maria Mendoza Elementary] School in autism classrooms.  At the start of the 2014-2015 school year, the minor's parents requested payment for services in the proposed private institution[, Centro Explora].

3.   The student remained placed in the [Ines Maria Mendoza Elementary] School for all of the 2014-2015 school year that ended in the month of May 2015.

Id. at p. 3.  Plaintiffs moved for reconsideration of Judge Tomassini's decision to dismiss the complaint as moot.  (Docket No. 50-1.)   Without explanation, Judge Tomassini denied reconsideration on June 8, 2015.  (Docket No. 15-1.)

On July 23, 2015, Arroyo-Delgado filed a complaint in this Court. (Docket No. 1.)  Defendants now move to remand the case to the ALJ. (Docket No. 24.)  AGA remains enrolled at the Ines Maria Mendoza Elementary School. (Docket No. 1 at p. 7.)

## II.  DISCUSSION

Defendants move to remand the case to the ALJ, arguing that the case is unripe for judicial review because the ALJ made no decision based on the merits of the case. See Docket No. 24. Although the Court finds the case ripe for judicial review, it remands the complaint to the ALJ for further proceedings consistent with this Opinion because the ALJ erred in dismissing the due process complaint as moot and because substantive determinations regarding the adequacy of AGA's education require the PR-DOE's specialized expertise.

## A.   The Individuals with Disabilities Education Act

The purposes of IDEA, inter alia, are "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs," 20 U.S.C. § 1400(d)(1)(A), and to "assess, and ensure the effectiveness of, efforts to educate children with disabilities," id. § 1400(d)(4). Free appropriate public education ("FAPE") is delivered to the disabled child through an IEP. See D.B. v. Esposito, 675 F.3d 26, 34 (1st Cir. 2012) ("The 'primary vehicle' for delivery of a FAPE

is an IEP." (quoting <u>Lessard v. Wilton-Lyndeborough Coop. Sch.</u> <u>Dist.</u>, 518 F.3d 18, 23 (1st Cir. 2008))). An IEP is a written statement detailing the child's current achievement levels and future goals in both academic and functional performance areas. <u>See</u> 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(III) (defining IEP). A team, which includes the parent of the disabled child, representatives of the local educational agency, and others, develops the IEP, <u>see</u> <u>id.</u> § 1414(d)(1)(B), and reevaluates the IEP on an annual, or more frequent, basis, <u>id.</u> § 1414(d)(4)(A)(i). "[T]o comply with the IDEA, an IEP must be reasonably calculated to confer a meaningful educational benefit." <u>D.B.,</u> 675 F.3d at 34.

If a child's parent considers the IEP to be inadequate, the parent has a right to an impartial due process hearing to review the adequacy of the IEP. <u>See</u> 20 U.S.C. § 1415(f)(1)(A). The "IDEA's policies favor[] prompt resolution of disputes in order to expedite the provision of FAPE to children who may be at a formative stage of their intellectual development." <u>Nieves-Marquez</u> <u>v. Puerto Rico</u>, 353 F.3d 108, 116 (1st Cir. 2003); <u>see</u> 34 C.F.R. § 300.515(a) (requiring a final decision resolving the matters in the due process hearing no later than forty-five days after an initial mediation period). The hearing officer is directed to make a decision "on substantive grounds based on a determination of whether the child received a [FAPE]." 20 U.S.C. § 1415(f)(3)(E)(i). "[A]ny party aggrieved by the findings and

decision . . . shall have the right to bring a civil action with respect to the complaint . . . in a district court of the United States . . . ." Id. § 1415(i)(2)(A).

**B.   Review of Administrative Decisions Pursuant to IDEA**

In any civil action brought pursuant to IDEA, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Despite the independence granted to federal courts by IDEA, courts must avoid "substitut[ing] their own notions of educational policy for that of the state agency, which has greater expertise in the educational arena." Lt. T.B. *ex rel.* N.B. v. Warwick Sch. Comm., 361 F.3d 80, 83-84 (1st Cir. 2004). "Judges are not trained pedagogues, and they must accord deference to the state agency's application of its specialized knowledge." Lessard, 518 F.3d at 24. Thus, "judicial review falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard." Id.

**C.   Ripeness**

Defendants challenge plaintiffs' federal complaint as unripe for judicial review. See Docket No. 24.

"In evaluating a claim to determine whether it is ripe for judicial review, [courts] consider both 'the fitness of the issues

for judicial decision' and 'the hardship of withholding court consideration.'" Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 670 n.2 (2010) (quoting Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003)).

In the administrative context, ripeness protects "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Nat'l Park Hosp. Ass'n, 538 U.S. at 807-08 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)).

### 1.    Fitness for Judicial Review

The fitness prong of the ripeness test "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995). "[I]ssuing opinions based on speculative facts or a hypothetical record is an aleatory business, at best difficult and often impossible." Id. at 536; see City of Fall River v. FERC, 507 F.3d 1, 6-8 (1st Cir. 2007) (refusing to review FERC's decision that was contingent upon pending approvals from other governmental agencies); McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 72-73 (1st Cir. 2003) (stating case based on potential future pregnancy is contingent on several future events that "may or may not happen," which makes it unlikely to be fit for judicial review).

When "all of the acts that are alleged to create liability have already occurred," courts are likely to find the case fit for review. Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, 651 F.3d 176, 189 (1st Cir. 2011) (quoting 10B Charles Alan Wright et al., Federal Practice and Procedure § 2757 (3d ed. 1998)); see Pustell v. Lynn Pub. Sch., 18 F.3d 50, 52 (1st Cir. 1994) (finding challenge to school committee's past refusal of parents' home schooling plan fit for review because "[n]o further factual development is necessary for [the court] to resolve the question at issue").

Here, the plaintiffs' claims meet the fitness prong of the ripeness doctrine.  Resolution of the case does not depend on "speculative facts" or a "hypothetical record."  Plaintiffs challenge the ALJ's decision to dismiss the administrative due process complaint as moot, the PR-DOE's past failures to comply with IDEA, and the adequacy of the IEP for the 2014-2015 school year.  (Docket No. 1 at pp. 19-24.)  These claims concern events from the 2014-2015 school year that have already occurred and, thus, the complaint does not depend on a string of future contingent events.  As in Verizon New England, acts from the past that are alleged to create liability meet the fitness requirements of the ripeness doctrine.  See 651 F.3d at 189.  And unlike City of Fall River, this case is not awaiting further determinations from the PR-DOE or any other administrative body.  See 507 F.3d at 6-8.

Because additional factual development is not necessary to settle this case, the present controversy is fit for review.

**2.   Hardship of Withholding Court Consideration**

Evaluation of the hardship prong includes "the extent to which withholding judgment will impose hardship – an inquiry that typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties." McInnis-Misenor, 319 F.3d at 70 (quoting Stern v. U.S. Dist. Court for the Dist. of Mass., 214 F.3d 4, 10 (1st Cir. 2000))(internal quotation marks omitted); see Nat'l Park Hosp. Ass'n, 538 U.S. at 810 (finding a lack of hardship where petitioners "suffer no practical harm as a result of" agency's decision); City of Fall River, 507 F.3d at 7 (finding that delaying judicial review presents no hardship to plaintiffs where suit can be brought at a later time, benefitting from further factual development, without a risk of further injury).   In determining hardship, courts should consider "whether granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994).

This case presents a "direct and immediate dilemma" for plaintiffs.   Denying judicial review forces plaintiffs to accept the ALJ's dismissal and forfeit their challenge to the adequacy of AGA's IEP for the 2014-2015 school year.   This result is especially

harsh when considering the fact that plaintiffs did not receive a decision "made on substantive grounds," as required by IDEA, 20 U.S.C. § 1415 (f)(3)(E)(I).

Because the actions creating liability occurred in the past and the injury is ongoing, neither the parties nor the Court benefit from delaying judicial review.  Each day that AGA goes without compensatory education to which he may be entitled increases his injury.  Compensatory education would allow AGA to "catch-up" on learning objectives that he may not have mastered in a potentially suboptimal learning environment.  Each day that he is not catching up, he remains at a diminished developmental level and also forgoes opportunities to build on the knowledge that he should have already obtained.

The PR-DOE, an agency with an unflattering history in the judicial system, see generally Colon-Vazquez v. Dep't of Educ., 46 F. Supp. 3d 132 (D.P.R. 2014) (Fuste, J.), has already given plaintiffs the run-around for over a year, exceeding any interpretation of the expedited review process that IDEA envisions, see Nieves-Marquez 353 F.3d at 116 (stating that needless delay would cause child irreparable harm).  To avoid further hardship, plaintiffs must turn to the federal courts, as allowed by IDEA, for review of the ALJ's dismissal of their due process complaint. See 20 U.S.C. § 1415(i)(2)(A) (granting right to civil action for

parties aggrieved by the findings and decision of the administrative agency).

Accordingly, the Court finds the current controversy sufficiently ripe to review the ALJ's determinations.

**D.  Review of the ALJ's Mootness Decision**

Having found the case ripe for the Court's review pursuant to 20 U.S.C. § 1415(i)(2)(A), the Court now reviews the ALJ's dismissal of plaintiffs' due process complaint.  The ALJ found the complaint moot because "the passage of time ha[d] caused the matter to lose its condition of a live and present controversy."  (Docket No. 27-7 at p. 8.)

The United States Constitution grants jurisdiction to federal courts to adjudicate live cases or controversies.  U.S. Const., art. III, § 2, cl. 1.[3]  The case or controversy must exist at all stages of litigation and when circumstances change removing any possibility of the court providing effective relief, "the case or controversy is no longer justiciable."  See Matos v. Clinton Sch. Dist., 367 F.3d 68, 71-72 (1st Cir. 2004) (dismissing claim for injunction to reinstate student from school suspension as moot because student had already served the full suspension).

---

[3] Because the ALJ applied mootness principles grounded in Article III's 'case or controversy' requirement, the Court uses the same legal framework to review the ALJ's finding of mootness.  See Docket No. 27-7 at pp. 7-8.

Plaintiffs' due process complaint can be summarized into two categories of alleged breaches of IDEA:  (1) failure to provide a proper IEP and school placement for AGA for the 2014-2015 school year;[4] and (2) failure to provide services and assessments to which AGA is entitled pursuant to IDEA.  See Docket No. 27-1 at pp. 7-8. Both survive mootness attacks.

**1.    The Individual Education Program and School Placement**

A case is excepted from the mootness doctrine when it is "capable of repetition, yet evading review." Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997) (quoting Roe v. Wade, 410 U.S. 113, 125 (1973)).  In applying this exception, courts consider if:  "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action

---

[4] Without a proper IEP, a student is denied a FAPE.  See D.B, 675 F.3d at 34.  IDEA authorizes compensatory education for a period in which a FAPE was not provided to a qualifying student, if certain conditions are met.  20 U.S.C. § 1412(a)(10)(c)(ii).  "A compensatory education award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." 67B Am. Jur. 2d Schools § 430 (2016) (citing Mary McLeod Bethune Day Acad. Pub. Charter Sch. v. Bland, 555 F. Supp. 2d 130 (D.D.C. 2008)).  Judge Tomassini's characterization of plaintiffs' request for compensatory education as a request to have the PR-DOE pay for a private education for AGA for the 2014-2015 school year mischaracterizes plaintiffs' claim. See Docket Nos. 27-7 at p. 1 (Judge Tomassini's characterization of the claim); 27-1 at p. 7 (requesting either "a public placement, or otherwise a private placement that is appropriate to his specific needs as a disabled child").

again." Id. at 479-80 (quoting Pallazola v. Rucker, 797 F.2d 1116, 1129 (1st Cir. 1986)).

Regarding the first prong, courts have found that one school year is too short a time to litigate fully an IEP dispute. See Bd. of Educ. v. Rowley, 458 U.S. 176, 186 n.9 (1982) (allowing challenge to past IEP after school year had ended, noting "[j]udicial review invariably takes more than nine months to complete"). "Such controversies are likely to evade review because the 'administrative and judicial review of an IEP is "ponderous" and usually will not be complete until a year after the IEP has expired.'" Rome Sch. Comm. v. Mrs. B., 247 F.3d 29, 31 (1st Cir. 2001) (quoting Daniel R.R. v. State Bd. of Educ., 874 F.2d 1036, 1041 (5th Cir. 1989)). The case law is clear that challenges to an IEP can be pursued past the school year for which they are relevant. See Rowley, 458 U.S. at 186 n.9; Rome Sch. Comm., 247 F.3d at 31; Rachel H., 14 F.3d at 1403; Daniel R.R., 874 F.2d at 1041. Thus, plaintiffs' claim here, being of a type that typically requires extended litigation and having itself continued in litigation beyond one school year, meets the first prong for this mootness exception.

Regarding the second prong, IEP disputes are reasonably likely to recur between the same parties - the school district and the parent(s) - because a new IEP evaluation occurs at least annually. See Bd. of Educ. v. Rowley, 458 U.S. 176, 186 n.9 (1982)

(noting that "deficiencies in the IEP were capable of repetition as to the parties before it yet evading review"); see also Rome Sch. Comm. v. Mrs. B., 247 F .3d 29, 31 (1st Cir. 2001) (stating dispute over the services due to a disabled child pursuant to IDEA is a controversy likely to recur as the school district proposes new IEPs); Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H., 14 F.3d 1398, 1403 (9th Cir. 1994) (concluding that parents' and school district's opposing views regarding proper educational placement of disabled child is a continuing conflict that will arise frequently); Daniel R.R., 874 F.2d at 1041 ("Given the parties' irreconcilable views on the issue, [the educational placement] will be an issue every time [the school district] prepares a new placement or IEP . . . .").

Here, it is likely that plaintiffs' concerns over the adequacy of AGA's 2014-2015 IEP will repeat for subsequent IEPs. In fact, in their federal complaint, plaintiffs state that the PR-DOE has maintained AGA's allegedly inadequate IEP and school placement for the 2015-2016 school year, thus demonstrating the repetitious nature of this case. See Docket No. 1 at p. 4 (stating that the PR-DOE "has once again failed to [provide an appropriate educational placement] for the upcoming 2015-2016 school year"). Agreeing with the dismissal of the due process complaint not only denies review of an issue capable of repetition yet evading review,

but incentivizes a strategy of delaying review of IEPs until the school year is over.

Because the IEP dispute process exceeds one year in duration, and because additional disputes regarding subsequent IEPs are reasonably expected between the plaintiffs and the PR-DOE due to the recurring nature of IEPs, the Court finds that the issue of the adequacy of AGA 2014-2015 IEP is not moot. The ALJ's decision to dismiss this issue is therefore **REVERSED.**

Having reversed the ALJ's finding of mootness on the issue of adequacy of AGA's 2014-2015 IEP, the Court must determine whether to remand this issue as requested by defendants. (Docket No. 24.) The administrative record is incomplete; the PR-DOE has not presented all of its witnesses and the record contains no substantive rulings on the adequacy of the IEP provided to AGA. Plaintiffs and defendants agree that the ALJ failed to issue a substantive ruling on the causes of action stated in plaintiffs' due process complaint. (Docket Nos. 1 at p. 18; 23 at p. 6.) When the factual record is not sufficiently developed, a district court may need to remand the case for further proceedings. See Me. Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 20 (1st Cir. 2003) (instructing district court to remand the case for further administrative adjudication if the factual record provided is not sufficient "to make the highly nuanced judgments necessary to resolve the claim").

Accordingly, the Court **REMANDS** this case to the ALJ for substantive determinations regarding the adequacy of AGA's IEP and educational placement for the 2014-2015 school year.  Because the school year is finished, the ALJ must also determine whether AGA was denied a FAPE for the 2014-2015 school year and what compensatory education, if any, is appropriate.  The ALJ must substantively address, accompanied by factual determinations, all of plaintiffs' claims in the original due process complaint.  The Court **ORDERS** that a final decision by the ALJ on the merits of the due process complaint must be returned within **45 DAYS** of the date of this Opinion.

### 2.   Educational Services and Developmental Assessments

Plaintiffs' remaining claims for relief in the form of evaluations and assistive technology are also not moot.  The United States Supreme Court and the First Circuit Court of Appeals have both found that "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)).  Said another way, "a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party."  Id. (quoting Horizon Bank & Tr. Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004)).

Here, plaintiffs' claims are not moot because the issues are live and plaintiffs maintain a legally cognizable interest in the outcome.  Plaintiffs' claims that AGA is entitled to services and evaluations pursuant to IDEA present a live controversy because they remain unresolved, see Powell v. McCormack, 395 U.S. 486, 499 (1969) (finding a case not moot when salary deprivation claims remained unresolved), and the parties disagree over a determinative issue that is appropriate for judicial determination.  See 20 U.S.C. § 1415(f) (authorizing an ALJ to resolve issues raised in a due process complaint through an impartial administrative hearing); see also Docket No. 27-1 at p. 8 (requesting service assistant, food pursuant to dietary needs, assistive equipment, non-verbal language and speech evaluation, and occupational therapy evaluation).  AGA is still in school, see Docket No. 1 at pp. 2-3, and is still protected by IDEA and Puerto Rico law, see 20 U.S.C. § 1412(a)(1)(A) (providing a FAPE to all children with disabilities "between the ages of 3 and 21"); P.R. Laws Ann. tit. 18, § 1352(2) (protecting the right of disabled individuals to a free education "from birth through the age of 21 years"), and therefore would still benefit from an ALJ determination in his favor on these issues.  Because plaintiffs' claims have not been resolved, and because plaintiffs maintain a legally cognizable interest in the ALJ's decision on these issues, plaintiffs' claims

for evaluations and assistive technology are not moot.  The ALJ's decision to dismiss these claims is **REVERSED.**

Unlike the issue of adequacy of the IEP, the record on the issues of evaluations and assistive technology is sufficiently developed.  Thus, remand on this issue is not required.  Pihl v. Mass. Dep't of Educ., 9 F.3d 184, 191 (1st Cir. 1993) (finding the "peculiar expertise of an administrative hearing officer" unnecessary to resolve the claim because of the substantially developed factual record (quoting Lester H. v. Gilhool, 916 F.2d 865, 869 (3d Cir. 1990))).  In their complaint, plaintiffs request an occupational therapy reevaluation with sensory processing focus, a non-verbal speech and language evaluation, and assistive technology devices to include a hand-writer, a writing guide, easy-grip scissors, an adjustable-angle easel, a Go! Board with 6 icons holders, a speech therapy mirror, and a Take or Place N' Talk.  The parties agreed that these items should be provided to AGA in AGA's 2014-2015 IEP and during a subsequent IEP Review Meeting on October 2, 2014.  See Docket Nos. 71-7 at pp. 1 (stating that the last occupational therapy evaluation occurred in 2011, exceeding the three-year IDEA limitation established in 20 U.S.C. § 1414(a)(2)(B)(ii)); 15 (listing assistive equipment needed by AGA, including easy-grip scissors, a Go! Board with 6 icons holders, a speech therapy mirror, and a Take or Place N' Talk); 80 (instructing that a letter be sent in order to initiate re-

evaluations by the speech-language therapist and occupational therapist); see also Docket No. 71-4 at pp. 19-20 (recommending occupational therapy and speech and language evaluations).

Because IDEA permits district courts to grant appropriate relief based on the preponderance of the evidence, see 20 U.S.C. § 1415(i)(2)(C), and because the record is sufficiently factually developed for the Court to discern the parties' agreement on these issues, the Court **DENIES** defendants' motion to remand on the issues of evaluations and assistive technology.

**E.    Attorneys' Fees**

In their civil complaint, plaintiffs request attorneys' fees as prevailing parties pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I). (Docket No. 1 at p. 24.)  The Court withholds judgment on the issue of plaintiffs' status as prevailing parties until the ALJ makes a determination on the issue of the adequacy of the 2014-2015 IEP.

**IV.   CONCLUSION**

As the litigation continues, the goals of IDEA must be kept in mind and all involved must avoid thinking in terms of winners and losers.   While the process may again become emotional and contentious, the drawn-out timeline only increases potential damage to AGA's educational opportunities.

For the reasons discussed above, the Court **REVERSES** the ALJ's decision to dismiss the due process complaint as moot, **GRANTS** defendants' motion to remand on the issue of the adequacy of the

IEP, **DENIES** defendants' motion to remand on the issues of evaluations and assistive technology, and **REMANDS** the issues of adequacy of the 2014-2015 IEP, FAPE determination for 2014-2015, and compensatory education for 2014-2015 to the ALJ for further proceedings consistent with this Opinion.

      **IT IS SO ORDERED.**

      San Juan, Puerto Rico, August 10, 2016.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
